Argued and submitted May 3, affirmed September 4, reconsideration denied
November 6, petition for review denied December 17, 1991 (312 Or 527)

ALLSTATE INSURANCE CO.,
*Respondent,*

*v.*

AMERICAN STATES
INSURANCE COMPANY,
*Appellant,*

*and*

Gene W. CAVENAILE
and Craig G. Weygandt,
*Respondents.*

Gene W. CAVENAILE,
*Third-Party Plaintiff,*

*v.*

STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,
*Third-Party Defendant.*

(8907-03801; CA A65636)

816 P2d 709

Paul L. Roess, Portland, argued the cause for appellant. With him on the brief was Acker, Underwood, Norwood & Hiefield, Portland.

John Paul Graff, Portland, argued the cause for respondent Allstate Insurance Company. With him on the brief was Graff & O'Neil, Portland.

Richard A. Lane, Portland, waived appearance for respondent Gene W. Cavenaile.

No appearance for respondent Craig G. Weygandt.

Before Deits, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

## RIGGS, J.

Plaintiff Allstate Insurance Co. (Allstate) seeks a declaratory judgment that defendant American States Insurance Co. (American) is liable under the omnibus clause of its automobile insurance policy. The trial court granted Allstate's motion for summary judgment. American appeals, and we affirm.

The material facts are not in dispute. Canby Ford, an automobile dealership and garage, loaned Oathes a used Ford Bronco as a substitute for his car while it was being repaired. Feller, one of the owners of Canby Ford, wanted to sell the Bronco and hoped that Oathes would want to buy it. He gave Oathes permission to keep it over the weekend, telling him that Oathes and his wife should make it "their own car" and "[b]asically just to use it as they saw fit." Feller placed no restrictions on their use of the car.

On Sunday, Mrs. Oathes decided to use the Bronco to drive to the Portland Memorial Mausoleum. She stopped to buy flowers at a grocery store, where she met a family friend, Weygandt. She offered to take him to Riverview Abbey, where his grandparents are interred. She drove from the grocery store to the mausoleum, but asked Weygandt to drive from the mausoleum to Riverview Abbey. As Weygandt left the parking lot, he collided with a motorcycle driven by Cavenaile.

Cavenaile sued Mrs. Oathes and Weygandt for his personal injuries. Allstate insured the Oathes for general automobile liability and undertook the defense of Weygandt and Mrs. Oathes after Canby Ford's insurer, American, denied coverage. Allstate filed this action to determine American's liability under the omnibus clause of its automobile liability insurance policy.[1]

The trial court declared that the Bronco was a covered auto under American's policy at the time of the accident,

---

[1] The omnibus clause of American's policy defines an insured:

"D. WHO IS AN INSURED.

"1. For Covered Autos.

"a. You are an insured for any covered auto.

"b. Anyone else is an insured while using with your permission a covered auto [with exceptions not applicable here]."

that Weygandt was using the car with the permission of Canby Ford, that American has the primary obligation to defend and indemnify Weygandt and that Allstate's obligation to Weygandt is secondary to American's obligation.

American contends that the trial court erred in declaring that Weygandt was a permissive user and, therefore, covered under American's policy. It argues that Canby Ford did not give express permission for Weygandt to use the car and that there is no evidence of implied permission. Allstate argues that, because the Oathes were given permission for unrestricted use of the car, they were impliedly authorized to permit Weygandt to drive.

In *N.W. Marine Iron v. Western Casualty,* 45 Or App 269, 608 P2d 199, *rev den* 289 Or 209 (1980), we observed:

> "In finding that [the driver] Morris had permission to use the vehicle, the trial court in effect applied the rule that when an owner loans a vehicle to another for general use, and the permittee allows a sub-permittee to operate the vehicle, the use by the latter is within the implied permission of the owner." 45 Or App at 273.

In circumstances such as this case, when a garage loans its customer a replacement for the customer's own car and places no express restrictions on the use of the car, it has been held that the car may be used as if it were the customer's own car, and the customer may permit use of the car by another. *See Farm Bureau Ins. Co. of Neb. v. Allied Mutual Ins. Co.,* 180 Neb 555, 563, 143 NW2d 923 (1966); *see also* 12 Couch, *Cyclopedia of Insurance 2d* 45:402 (rev ed 1981 & 1990 Supp). Here, the Oathes were given the Bronco to use as a replacement while their car was being repaired. Feller placed no restrictions on their use and expressly instructed them to treat the car as their own and to use it as they saw fit. We conclude that the Oathes were authorized to permit Weygandt to drive the car.

Drawing on the facts of *N.W. Marine Iron v. Western Casualty, supra,* American contends that, before implied permission can be found, the owner must have actual or constructive knowledge of a "special relationship" between the permittee and the sub-permittee, making it reasonably foreseeable that the permittee will allow the sub-permittee to

drive the car. In *N.W. Marine Iron,* we held that the facts that the owner had loaned the car to her brother without restrictions on its use and that she knew that her brother allowed his friend to use his own car on occasion, were sufficient to support a finding that the friend had permission to use the car. 45 Or App at 273. American points to several other cases, contending that they all contain, in American's words, "a common evidentiary thread of a 'special relationship' " from which the trier of fact could determine that the owner had constructive knowledge or reasonable anticipation that others would use the car. *See, e.g., State Farm Mutual Automobile Ins. Co. v. Williamson,* 331 F2d 517, 520 (9th Cir 1964); *Standard Accident Ins. Co. v. New Amsterdam Cas. Co.,* 249 F2d 847 (7th Cir 1957); *Safeco Insurance Co. of Amer. v. Pacific Indemnity Co.,* 66 Wash 2d 38, 401 P2d 205 (1965). American misunderstands the analysis. The named insured's permission for a sub-permittee to use the car may be implied from the broad scope of the initial permission *or* from other surrounding circumstances, such as a relationship between the parties or their conduct over a period of time. *See* Annot., 21 ALR 4th 1146 § 2[a] (1983 and 1990 Supp).

The trial court did not err in declaring that Weygandt was using the car with the permission of Canby Ford and was an additional insured under American's policy.

Affirmed.